## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

Kayla Poppe,                                    Court File No.: _____

       Plaintiff,

v.

Aspen Technology, Inc., a Massachusetts
Company, AKA AspenTech, doing business
In the State of Minnesota, and Open Systems
International AKA OSI a Minnesota Corporation,

       Defendants.

COMPLAINT FOR:

1.  WHISTLEBLOWING IN VIOLATION OF MINN. STAT. §181.67, MINN. STAT. §181.932 AND §181.935
2.  THE EQUAL PAY ACT (EPA) PART OF THE FAIR LABOR STANDARDS ACT OF 1938 29 CFR PART 1620 AND THE EQUAL PAY ACT OF 1963, 29 U.S.C. 206(d).
3.  VIOLATION OF EQUAL PAY MINN. STAT. §181.67
4.  MINN. STAT. §181.13 FAILURE TO PAY COMPENSATION DUE TO PLAINTIFF
5.  GENDER DISCRIMINATION IN VIOLATION OF TITLE VII 42 U.S.C. §2000(e)
6.  GENDER DISCRIMINATION IN VIOLATION OF MINN. STAT.§ 363A.01 ET. SEQ AND MINN. STAT.§ 363A.08, ET SEQ., AS AMENDED
7.  NEGLIGENCE
8.  PROMISSORY ESTOPPEL
9.  UNJUST ENRICHMENT
10. MINN. STAT. §181.963 TURNING OVER PERSONNEL FILE IN A TIMELY MANNER AND A STATEMENT

1

INTRODUCTION

1.   Plaintiff was induced by Aspen Technology, Inc. to enter into employment as a Human Resource Director for its newly acquired firm OSI based on representations by Defendants that it had an anti-discrimination policy, equal opportunity business and financial advantages. After she was hired, she started to get her paychecks from OSI. Plaintiff observed how employees were retaliated against when they reported discrimination. She was praised for her job performance, but her reports on discrimination investigations were disregarded and subjected her to retaliation for investigating them. Defendants discriminated against her as a woman and did not follow her statements, recommendation and reports whereas it gave deference to males who were treated differently than she was as a female. Plaintiff observed that Defendant maintained a discriminatory work environment where discrimination was not only condoned and retaliated against when reported, but males were treated differently and better if they were not a minority. Male employees were compensated at a higher rate than females. Plaintiff as an HR director in good faith reported discrimination and harassment as well as other suspected illegal acts such as unequal pay at the workplace and was retaliated against for doing so.

2.   In retaliation for her resistance and whistleblowing Defendant pretextually and wrongfully gave her a severance agreement on February 27, 2024,

that stated she was terminated as of March 19, 2024. The Defendant subsequently sent her a second severance agreement back dated stating that she was being terminated as of February 27, 2024, to avoid having to pay her for the non-discretionary vesting of Stock options due on March 1, 2024. Aspen retaliated against Plaintiff by wrongfully terminating her on February 27, 2024, right before vesting of stock options was due to be paid on March 1, 2024. Defendant intentionally wrongfully terminated plaintiff after she was induced to do substantial work relying upon receiving the vesting of stock options and later a bonus and contributions to her 401K plan.

## TYPE OF ACTION

3. This is an action for damages for retaliation for whistleblowing in violation of the Equal Pay Act of 1963 29 U.S.C. 206(d), MINN. STAT. §181.932 and §181.935, federal gender discrimination pursuant to Title VII, gender discrimination in violation of Minn. Stat. §363A.08, *et seq.*, as amended and Minn. Stat. §362A.08, violation of §181.96, paying males more than females, Minn. Stat. §181.67, Minn. Stat. §181.13 failure to pay compensation due to Plaintiff and Minn. Stat. §181.963 failure to turn over personnel file in a timely manner and a statement of why she was terminated and declaratory judgment. Plaintiff is seeking monetary damages and declaratory judgment relief related and/or incurred as a result of Defendants' wrongful conduct in violation of the foregoing law.

## DEMAND FOR JURY TRIAL
## NATURE OF THE CASE

4.      This is an action brought by Plaintiff Kayla Poppe, a United States citizen and resident of the state of Minnesota (herein after "Kayla," "Poppe," or "Plaintiff") against Aspen Technology, Inc., AKA AspenTech and Open Systems International AKA OSI doing business in Minnesota (hereinafter "Employers," "Company," "AspenTech," "Aspen" "Open Systems International", "OSI" "Defendants." The Defendants have confusingly used different names at different

## JURISDICTION

5.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, [Federal Question], under statutory authority and 28 U.S.C. §1367(a), and §Supplemental Jurisdiction, of this Court. This suit is brought, and jurisdiction lies pursuant to The Equal Pay Act and Title VII 42 U.S.C. §2000(e) as amended for gender discrimination. Further, this action is based on diversity of citizenship because Plaintiff is a Minnesota resident and Defendant Aspen Technology, Inc. resides in Massachusetts. The matter in controversy exceeds $75,000 exclusive of interest.

6.      The Court has jurisdiction over claims arising under Minnesota state law pursuant to its pendent jurisdiction and 28 U.S.C. §1367(a). The claims arising under Minnesota state law including the Minnesota Whistleblower statute Minn. Stat. §181.932, *et seq*, as amended and Minn. Stat. §363A.08, *et seq.*, as amended

4

and violation of Minnesota law involving failure to pay money owed, failure to provide equal pay and on supplying personnel records. The claims arising under State and Federal law arise from the same case or controversy and have a common nucleus of operative fact.

## VENUE

7.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(1)-(2). Kayla Poppe resides in the State of Minnesota. A substantial part of the wrongs alleged herein were committed within Hennepin County, Minnesota, which is within the District of Minnesota.

## PERSONAL JURISDICTION

8.     Aspen Technology, Inc. AKA AspenTech is on information and belief a Massachusetts Corporation. It is a global technology company that provides software and services.  Its headquarters is located at 20 Crosby Drive, Bedford, Massachusetts.  It employs more than fifty people.  It has a Minnesota office where Plaintiff worked as a Human Resource director and where the personnel files were located at 4101 Arrowhead Dr., in Medina, County of Hennepin, Minnesota.  The other related Defendant OSI worked out of the same Minnesota office in Medina.

## THE PARTIES

### PLAINTIFF

#### KAYLA POPPE

9.    Kayla Poppe (herein after "Kayla," "Poppe," "Plaintiff") is a female who is a United States citizen and a resident of the State of Minnesota, County of Hennepin, on 5500 Harriet Avenue in the City of Minneapolis. She is a natural person.

10.    Plaintiff observed while working for Defendants that they were not honest and covered up things. Defendants were also negligent in handling matters and could not be depended on. Based on information belief Aspen Tech is being acquired by Emerson in the winter of 2025 and based upon her experience Plaintiff has a reasonable belief the evidence will be destroyed or at best misplaced as the takeover is imminent and there is immediacy in filing a complaint in the month of February 2025.

11.    All conditions precedent to jurisdiction have been complied with to wit: Plaintiff filed a charge with the EEOC and was given a right to sue on February 20, 2025, by the EEOC. All conditions to start the instant complaint have been completed. She filed the instant lawsuit within 90 days of February 20, 2025.

DEFENDANT ONE
ASPEN TECHNOLOGY INC.,

12.    Defendant Aspen Technology, Inc., AKA AspenTech (hereinafter "Employer," "Company," "Aspen Technology," "AspenTech," "Defendant," or "employer") is a firm doing business in Minnesota at 4101 Arrowhead Drive,

6

Medina, County of Hennepin in the State of Minnesota 55340.

## DEFENDANT TWO

13.    Defendant Open Systems International was acquired by Aspen Technology Inc., and although Plaintiff was hired by Aspen Technology Inc., she was paid by OSI.  On information and belief OSI after being acquired by Aspen Technology Inc. still maintains its headquarters at 4101 Arrowhead Drive in Medina, Minnesota 55340.

14.    Since Defendants have so confusingly used different names including what is set forth above this complaint will refer to both Aspen and OSI who worked together as Defendants.

## PROCEDURAL POSTURE

15.     Plaintiff is a female person who is a citizen of the United States and the State of Minnesota and resides at 5500 Harriet Ave., Minneapolis, MN 55419. The unlawful employment practices alleged herein were committed within the state of Minnesota. Defendants are a business or businesses authorized to do business as Aspen Technology Inc. and Open Systems International currently doing business in the state of Minnesota.  Aspen Technology Inc. also does business in other states.  It is a business that affects interstate commerce and employs more than fifty employees.

GENERAL ALLEGATIONS

16.    Plaintiff brings claims for discrimination in violation of Title VII, Federal Equal Pay Act, violation of equal pay pursuant to Minn. Stat. §181.67, Minn. Stat. §181.13, violation of the Minnesota Human Rights Act, Minn. Stat. §363A.08, et seq., as amended. Minnesota state law on Whistle blowing Minn. Stat. §181.932 and Minn. Stat. §181.935, and negligence, promissory estoppel and violation of Minn. Stat. §181.961 and Minn. Stat. §181.963 failure to provide full personnel file within seven days.

17.    The Federal court has jurisdiction based on the Plaintiff's claims for violation of Title VII, Equal Pay Act and because there is diversity of citizenship between Plaintiff and Defendant Aspen Technology Inc. in Bedford, Massachusetts.

18.    Defendants' business involves interstate commerce.

19.    The matter in controversy exceeds (exclusive of interest and costs) the sum of seventy-five thousand dollars ($75,000.00).

FACTS

PLAINTIFF'S EMPLOYMENT WITH

OPEN SYSTEMS INTERNATIONAL AKA (OSI)

20.    On July 18, 2022, Plaintiff was hired by Aspen Technology Inc. to begin employment with Open Systems International (OSI), which was acquired earlier by Defendant Aspen Technology Inc. in May of 2022.  She was hired at base

annual salary of $170,000+ 17.5% bonus target+ $54,000 annual LTI. Kim Hirsch was her boss.  She was later promised the vesting of stock options bonus and contributions to a 401K plan/

21.    February 2023- Mariah Sheehan, Director of HR, began her employment with Aspen Technology Inc.  She had 3 years less experience than Plaintiff.

22.    In approximately March/April of 2023- Shannon Lin (female, Asian) came forward with an allegation involving male colleagues and leaders who made sexist and racist comments during a team event when they were traveling together to a customer's site. During that investigation by Plaintiff, the men involved admitted to having made these comments. One of them was at a director level who after being reprimanded asked to be moved to an individual contributor position. His pay was kept at the same rate and he was moved out of management at his request. All others received coaching or warnings and no one was terminated as a result of this discriminatory conduct.  Aspen did not take the men's conduct to be serious and showed minimal interest in what the men had done and no interest in the harm to the woman but was retaliatory toward Plaintiff for taking action on it.

23.    April 2023- Plaintiff was notified that she was under investigation after an allegation was made that she was recording conversations with Denny Hogenson, Talent Acquisition Manager for OSI. There was never resolve given to her on where

the investigation landed.  This was a pretextual investigation out of retaliation to scare and chill plaintiff from further investigations of discrimination, harassment and retaliation by men of women.

24.    June 2023- Plaintiff worked on the Global Job Architecture Project which was given guide lines for salary that she in good faith suspected were giving men higher pay for the same type of work than women.  This job was a significant lift assigning the appropriate job/salary levels to the 1200 OSI employees.   While doing this work Defendant was aware that Plaintiff resisted and reported that she suspected the pay given men as compared to women was a violation of law.  Plaintiff observed working for Defendant a discriminatory compensation decision or other practice was adopted by it.  She and other women were subject to the decision or practice of unequal pay.  Plaintiff was affected by application of the decision or practice of unequal pay and has been damaged because of it.

25.    July 15, 2023– Plaintiff received text message from Kim Hirsch in Human Resources regarding an employee of Aspen Technology inc. in reference to a large group presentation Kayla held: "You did really well today! I was only on for 10 mins or so but you were so composed and confident!" This was consistent with the feedback that Plaintiff got about her excellent performance.

26.    On August 24, 2023 Plaintiff received text message from Kim Hirsch saying "your bonus is being paid tomorrow and wanted to share that you will be paid

at 100%" This again was representative of the fact that Plaintiff had excellent performance.

27.    On September 1, 2023, a merit increases of 3% (fully budgeted) went into effect and Plaintiff also received 100% bonus and another $54k LTI award.  This was showing the excellent performance of Plaintiff.  Defendant led Plaintiff to believe these compensations were based on her achieving goals and were non-discretionary.

28.    In the fall of 2023, in September and early October of 2023, Plaintiff in good faith reported to superiors that she suspected that paying men more for the same job as females was a violation of law.  She also raised in good faith that OSI was discriminatorily treating men differently and better than females.  For example, it was not listening to Plaintiff's recommendations and reports while giving deference to ones made by male employees.  Plaintiff in good faith conveyed that OSI was maintaining a hostile work environment by condoning men acting in a discriminatory and harassing workplace where men were allowed to say and do sexually offensive things. While Defendants seemed to recognize her excellent performance, it reacted in a retaliatory manner by further ignoring her recommendations and side lining her from some important decisions related to the topics of her whistleblowing.

29.    Despite Ms. Poppe's longer tenure with the company, she was

terminated from AspenTech while a less-tenured colleague in a similar level role was retained (M. Sheehan). Retaining a less tenured and less qualified employee in the same or a comparable position suggests the possibility of unequal treatment.

30.    A request was made January 24, 2025, for a "full statement for why Ms. Poppe's employment was terminated" and no response has been received. Ms. Poppe was not given any indication that her role was at risk prior to being notified abruptly on February 27, 2024. Additionally, she received no documentation or communication outlining the criteria used to determine why she was chosen to be terminated from the company while a less-tenured colleague in a similar role was retained.

31.    Male Director Level Pay higher than female counter parts:

| | |
|---|---|
| Tony Coyle | Todd Obermiller |
| Dan Whitney | Mike Wenzel |
| Dan Lysaker | Josh Boysen |
| TJ Surbella | TJ Kellner |
| Mike Buth | Steve Lahr |

32.    In the fall of 2023, Plaintiff was involved in an investigation of Henry Hawley.

Allegations:
- Henry Hawley reported multiple instances of unfair treatment and harassment by his manager and coworker.

- The harassment included racist comments, which the manager and coworker later admitted to making.

Investigation & Outcome:

- Plaintiff investigated the allegations, and the implicated individuals acknowledged making racially insensitive remarks.

- Despite this admission, the manager and coworker remained employed with the company based on its condonation of discrimination, harassment and retaliation.

- A mediation meeting was held in November 2023 with Henry, his manager, and his coworkers. He did not have a lawyer to represent him.

- During this mediation, Henry resigned out of frustration.

  Company Response:
- The company recommended training for the female manager, which was subsequently provided by AspenTech, but not any male who may have been in a line of authority.

  Legal Considerations:
- Potential claims under Title VII of the Civil Rights Act of 1964 (race and sexual orientation discrimination).

- Possible violation of the Americans with Disabilities Act (ADA) or Uniformed Services Employment and Reemployment Rights Act (USERRA) if veteran status played a role.

- Hostile work environment claim may be viable given the admitted racist comments.

- Constructive discharge could be argued if Henry can demonstrate that the workplace was so intolerable that he had no choice but to resign

33.    In October of 2023 Plaintiff was involved in an investigation regarding

Richard Orr.

- Richard's FY2022 performance rating indicated he was not meeting expectations.

- Richard's manager, Parry Swenson, did not, however, disclose a relevant consideration which was that Richard had an approved medical accommodation which was relevant to the performance rating.

- A Performance Improvement Plan (PIP) was presented to Richard, at which point Richard raised concerns about his approved accommodations due to a medical condition/disability.

- Consultation took place with Legal (Laura Kahl) and Management (Kim Hirsch).

- Upon further review, it was confirmed that Parry Swanson the manager had previously approved accommodations for Richard, necessitating a rework of the PIP.

- There was a report in good faith by Plaintiff that Richard Orr had been discriminatorily treated but Defendant did nothing to correct the situation despite Plaintiff reporting in good faith she suspected a violation of law in how Defendant was treating Orr.

- In December of 2023 internal discussions began regarding a Reduction in Force (RIF) initiative called Adherent.

- Brad Irwin alleged that customers were requesting not to work with Richard Orr, and the company needed to find a way to exit him. This appeared to Plaintiff to be a pretextual reason for forcing Orr out of his job because of his disability and good faith complaint about discrimination. She in good faith reported to a superior that she suspected terminating would be a violation of law.

- On February 6, 2024, Richard Orr and his manger Parry were both selected as part of the RIF which indicated to Plaintiff that they were being discriminated and retaliated against. Prior to the RIF, Jorge Colon requested discussions regarding backfilling roles for those being let go. Plaintiff in good faith believed that were serious legal considerations involving discrimination with what Defendant was doing including:

Legal Considerations:
- Americans with Disabilities Act (ADA):

    o The failure to acknowledge Richard's approved medical accommodations when initially placing him on a PIP could raise disability discrimination concerns.

- If Richard's termination was influenced by his medical condition despite his accommodations, a wrongful termination claim under the ADA could be considered.

- Retaliation & Pretext for Termination:

    - It appeared that RIF was used as a means to remove Richard Orr following accommodation-related disputes, which was a pretext for discrimination rather than a legitimate business decision.

    - The company's awareness of Richard's medical condition and Brad Irwin's directive to "find a way to exit him" supported a claim of retaliation or discriminatory intent.

34.    December 29, 2023, was Julia Sowada's last day with the company. Earlier that week, Julia shared with Plaintiff that her manager Denny Hogenson was grossing her out with his conversations about his open marriage, dating and sex life. Plaintiff told her that was a highly inappropriate conversation for a manager to be having with their direct report, especially male to female. Plaintiff recommended that she report this discriminatory and harassing conduct in her exit interview which she did.

- On January 3, 2024, Kim Hirsch emailed Julia to follow up on the harassment claim. Maegan McCrea began the investigation into the incident including having an interview with Plaintiff and emailed Julia on January 24 confirming the investigation was closed and there was no evidence of misconduct or sexual harassment found. There was a concern of Plaintiff's the harassment by a man was

15

being ignored that was known to Defendants. Plaintiff also knew that Defendants were displeased that she had recommended that a person report harassment at an exit interview. The employer had a binary attitude toward Kayla, it made clear that it thought she had excellent performance and achieved her goals on the jobs she was given while having a retaliatory attitude toward her for resisting and encouraging the report of sex harassment, discrimination, retaliation and equal pay for men and women.

35.    January 17, 2024, Kayla sent a text to Jorge Colon and Mark Gaalswyk (senior male leaders of the business) in response to a Teams message Jorge had sent around the upcoming RIF actions and how "these people will be backfilled." Backfilled meaning to be replaced and then substituted with others. The layoffs appeared to Plaintiff as not being based on a need to do so as reflected in the employer making clear that it intended to backfill in other words get rid of people who were considered to be a minority or asserting the right to have an anti-discrimination workplace and put other people in their place. The employer was misleadingly using the excuse of laying off employees as a pretext for discriminatorily and retaliatorily terminating them while intending to replace them by backfilling. Plaintiff in good faith reported the backfilling plan by Defendants was suspected by her to be illegal and back filling was being used as a euphemism

for discriminatory and retaliatory termination.

36.    On February 19, 2024, through February 23, 2024, Kayla was in Mexico on an approved vacation.

37.    Plaintiff was only required to work in the office Tuesday through Thursday. On her first day of the week back in the office Tuesday, February 27, 2024, Kim Hirsch met Kayla upon her arrival at approximately 7am to deliver the news that her position was eliminated. The severance agreement presented at this time stated her last day of employment would be March 19, 2024, yet they handed her a final pay stub which had 4 hours deducted for not having accrued enough vacation time to cover the week before. With a last day of employment of March 19, Kayla would have accrued vacation time such that it should not have been deducted from her final pay, received another three weeks of pay, had benefits through the end of March, and received another quarter's worth of vesting towards her stock options and units as well.

38.    Subsequent to the presentation of the severance agreement with March 19, 2024, as the termination date for Plaintiff, the Defendant delivered a second severance agreement back dated to February 27, 2024, as the termination date for Plaintiff to keep from paying Kayla what was due to her. After delivering the second severance agreement according to Defendants all unvested options and units automatically cancel upon termination and her benefits were termed the last day of

the month she was allegedly terminated, which had now been changed to February.

39.    Defendants retaliated against Plaintiff by wrongfully terminating her on February 27, 2024, right before her vesting was due to be paid on March 1, 2024. The vesting was considered "non-discretionary" and was earned based on performance metrics she had already met before termination so it should have paid it. Further, Defendant intentionally wrongfully terminated plaintiff out of retaliation before the vesting of another program as well as its duty to contribute to Kayla' 401K plan and later pay her a bonus.

40.    Plaintiff observed that after she had in good faith reported suspected violations of law, she was now subject to the same type of discriminatory and retaliatory wrongful termination that she in good faith had earlier reported was part of Defendants backfilling concept.

41.    The Plaintiff's termination was similar to the pattern Plaintiff had observed of Defendants terminating employees who were involved in discrimination complaints and reported that they believed Defendant was breaking the law. Defendant discriminated and retaliated against Plaintiff for her resisting and reporting suspected illegal acts.

42.    The foregoing termination was based on Plaintiff's resisting, pursuing and investigation of suspected law breaking by Defendant and good faith whistleblowing to her employer the Defendants.

43.     Plaintiff had in good faith reported that using a false label of backfilling shortly before going on vacation to terminate the employment of minorities or people who had resisted discrimination or retaliation was suspected to be illegal and the employer then retaliated by terminating her and not providing all of the financial rewards and benefits due to her

44.     Despite Plaintiff's longer tenure with the company, she was terminated from Defendants while a less-tenured colleague in a similar level role was retained (M. Sheehan). Retaining a less tenured and less qualified employee in the same or a comparable position show unequal treatment.

45.     A request was made by Kayla on January 24, 2025, for a full copy of her personnel file and no response was received within the seven (7) days set forth by law where the employment records are held within the state of Minnesota. Similarly, on January 24, 2025, Kayla asked for a statement from Defendant of why she was terminated but none was provided by Defendant to her.

46.     Plaintiff was not given any indication that her role was at risk prior to being notified abruptly on February 27, 2024. Additionally, she received no documentation or communication outlining the criteria used to determine why she was chosen to be terminated from the company while a less-tenured colleague in a similar role was retained.

47.     Plaintiff observed that Aspen Technology Inc. and OSI hired successful

women to do the hard work of building the organization while giving higher rewards and respect to their male counterparts and then pushing the woman out to have less qualified men run the organization.

48.    Plaintiff had communication with women who worked in various locations of Aspen Technology Inc. and OSI.  From these communications it was clear that there was an overall culture of unequal pay, gender and race discrimination, harassment and retaliation that she suspected were violating the law as set forth in this complaint.

## UNJUST ENRICHMENT

49.    Throughout the fall of 2023, and into the winter Defendants praised Plaintiff's performance, gave her difficult assignments that were commensurate with confidence of her high ability and gave her financial rewards all of which were indicative of her outstanding performance and calculated to induce Plaintiff to rely upon getting her stock options vested as of March 1, 2024, and other financial advantages thereafter including bonus and 401K. contributions.  Only after she was terminated and months later filed an EEOC charge did Aspen Technology Inc. (AspenTech) suddenly claim in their Position Statement response to her EEOC charge that they allegedly had already decided to terminate Kayla Poppe in the "fall of 2023," yet failed to disclose this fact.  Aspen technology Inc. (AspenTech's) decision to terminate Plaintiff in the "fall of 2023," only first came to Plaintiff's

attention in the response by Defendants to her EEOC charge.  By Defendants new

claim they would also be admitting that it misled her to continue working in 2023,

into 2024, without disclosure of their intent to deny her the fruits of her labor which

was in furtherance of its intent to get unjustly enriched at her expense.

50.    Defendants created a false impression of continued employment by

assigning Plaintiff long-term projects, additional responsibilities and sending her the

message that she was a vital resource that was needed. By assigning her additional

responsibilities including overseeing a critical workforce reduction (Adherent) in

January 2024, managing an increased HR workload, and working during an

approved vacation, Defendants knowingly misled her about her job security.  Kayla

reasonably relied on these representations, making professional and financial

commitments and personal sacrifices based on assumed job stability and related

financial rewards. As a result, Kayla Poppe made life-altering financial and

professional decisions based on Defendants false pretenses, causing economic and

emotional harm to her.

51.    Kayla Poppe suffered damages, including financial losses, severe

emotional distress, employment opportunity and reputational harm, when she was

unexpectedly terminated despite her significant contributions.

52.    Defendants unfairly benefited from Kayla Poppe's increased workload,

including her leadership in managing HR matters following the departure of a

Bedford HR team member. The Defendants profited from her contributions while concealing its intent to terminate her, leading to a wrongful retention of money and benefits at Poppe's expense.

53.    Defendants by their award to Plaintiff of a fully budgeted merit increase, bonus, and stock award contradicts any claim of Defendants that during that period it found any dissatisfaction with Plaintiff in the fall of 2023, and was looking for her replacement.   The facts as stated herein show Defendants' recognition of Plaintiff's excellent performance and contributions at the highest level.

54.    Defendants unjustly benefited from Plaintiff's continued work under the assumption of job security.  Kayla Poppe relied on these financial commitments in good faith making Defendants actions constitute bad faith employment practices and intent of Defendants to get unjustly enriched at Plaintiff's expense.

55.    Defendants made intentional representations and acts directed at Plaintiff to induce her to rely upon getting financial rewards to her detriment.

DEFENDANTS VIOLATED MINN. STAT. §181.961 AND §181.963

56.    On January 25, 2025, via email Plaintiff requested in writing her full and complete personal file from Defendants.  From her experience working as a Human Resource Director she knew that the information was stored electronically and quickly accessed in the Minnesota office of Defendants.  In fact, she even got a

message from Defendants that she would get the requested information the next day. She also on the same day requested a statement of why she was terminated. The Personnel file was required to be provided by Defendants within 7 days if file was stored in state. Defendants did not provide the employment file as requested within the right time limits nor ever supply the statement of why Plaintiff was terminated despite the fact it was readily available in Minnesota and its promise to have it to her the next day after the request was sent by her.

57.    The Defendants failed to adhere to Minn. Stat. §181.961 and they are subject to Minn. Stat. §181.963 USE OF OMITTED PERSONAL RECORD. Meaning nothing from the Plaintiff's personal file that was not sent to her may be used by the employer in an administrative, judicial, or quasi-judicial proceeding. Further, by not supplying a statement of why she was terminated it violated Minnesota statutory law.

COUNT ONE

WHISTLEBLOWING

58.    The allegations of the previous paragraphs are re-alleged and incorporated herein by reference in this paragraph as if fully set forth herein.

59.    Minn. Stat. §181.932 DISCLOSURE OF INFORMATION BY EMPLOYEES.

**Subdivision 1.** Prohibited action.

An employer shall not discharge, discipline, penalize, interfere with, threaten, restrain, coerce, or otherwise retaliate or discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1) the employee, or a person acting on behalf of an employee, in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;

(2) the employee is requested by a public body or office to participate in an investigation, hearing, inquiry;

(3) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason;

60.    Minn. Stat. §181.67 wage discrimination based on sex; protection of employees involved in a proceeding.

**Subdivision 1.** General prohibition.

No employer shall discriminate between employees on the basis of sex by paying wages to employees at a rate less than the rate the employer pays to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a differential based on any other factor other than sex..

**Subd. 2. Employees involved in proceeding.**

No employer shall discriminate against any employee in regard to hire or tenure of employment or any term or condition of employment because the employee has filed a complaint in a proceeding under sections 181.66 to 181.71, or has testified, or is about to testify, in any investigation or proceedings pursuant to sections 181.66 to 181.71 or in a criminal action pursuant to sections 181.66 to 181.71.

61.    Plaintiff was given the job by Defendants of dealing with the pay given

to employees.  From the experience she in good faith suspected that Defendants were not providing equal pay to women and men.

62.    Plaintiff observed that Defendants discriminated between employees on the basis of sex by paying wages to female employees at a rate less than the rate the employer paid to male employees for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

63.    In September and October of 2023, Plaintiff in good faith reported to superiors at Defendant that she suspected that Defendants were violating law by not paying women and men equal pay.

64.    Defendants did acts to chill Plaintiff from testifying in any investigation of OSI and/or Aspen Technology Inc. unequal pay based on gender.

65.    From Plaintiff's observation she in good faith believed that she was not paid the same as- a man with similar jobs

66.    More than once in January of 2024, Kayla in good faith reported to a superior at Defendants that she continued to suspect that they were violating the law by not paying men and women equally.

67.    Plaintiff observed that men such as: Kyle Rogers, Matt Korkowski, Josh Wilm, Mike Heinen, Josh Lind, Dan Whitney, Dan Lysaker, Dan Olson, Josh Wilm, Brad Irwin, Bryan Thorsell, Brian Marquardt, Raghu Akkihalli, Tim

25

McDougal, Todd Obermiller, Mike Buth, Josh Boysen, TJ Kellner, Mike Wenzel, Drew Curtis, Justin Beau, and Tony Coyle got paid more than she and other female colleagues did.

68. The jobs Plaintiff and men such as Kyle Rogers, Matt Korkowski, Josh Wilm, Mike Heinen, Josh Lind, Dan Whitney, Dan Lysaker, Dan Olson, Josh Wilm, Brad Irwin, Bryan Thorsell, Brian Marquardt, Raghu Akkihalli, Tim McDougal, Todd Obermiller, Mike Buth, Josh Boysen, TJ Kellner, Tony Coyle, and Mike Wenzel held, were comparable in terms of skills, training, and working conditions to Plaintiff's position, yet the men were paid more that Plaintiff.

69. Plaintiff worked with Jorge Colon during the global job architecture activity and noticed he would promote and pay men at a higher rate than the females.

70. Plaintiff whistle blew about discrepancies between males and females at the VP level which included: Sean Egan, Mark Gaalswyk, Jorge Colon, Sergio Bajetti, Andrew McGough, all males who were paid higher as compared to females at the same level such as Lindsey Nelson.

71. Plaintiff whistle blew about discrepancies between males and females at the senior director level which included: Kyle Rogers, Brad Irwin, Tim Meer, Jacob Annis, Matt Korkowski, all males who were paid higher as compared to females at the same level such as Tori Beattie.

72. Plaintiff whistle blew about discrepancies between males and females

at the senior manager level which included: Mike Williamson, Mukul Singh, Will Rutford, Alex Friebe, all males who were paid higher as compared to females at the same level such as such as Roopa Akkala, Megan Adamek, Stephanie Grant, Marie-Laurence Saint-Cyr, Kavitha Ramaiah.

73.    CEO, Antonio Pietri and Sharon Vinci, CHRO, created a fear-based work environment beginning mid-January 2024, requiring Plaintiff to enforce their newly implemented policy of reading badge scans and requiring employees to track their time worked in an AspenTech facility to ensure employees were working in the office at least three days per week. Defendants retaliated against plaintiff after she spoke up about that work not being value-add and that it was creating a toxic work environment.

74.    A male colleague at the same level in HR (S. Chaffman) was allowed to stay though he did not effectively performance manage two male employees whose performance deficiencies were well documented and discussed: Denny Hogenson and Davi de Paula.

75.    Male colleagues with equal to or less experience and qualifications than Plaintiff remained employed with AspenTech at the Senior Director or Director level including: Jacob Annis (Sr. Director), Kyle Rogers (Sr. Director), Brian Marquardt (Sr. Director), Matt Korkowski (Sr. Director), Josh Wilm (Sr. Director), Bryan Thorsell (Sr. Director), Brad Irwin (Sr. Director), Adam Wortz (Sr. Director), Tony

Coyle, Dan Whitney, Dan Lysaker, TJ Surbella, Daniel Olson, Justin Wiederanders, Timothy McDougall, Tate Carlson, Mike Morris, Mauro Castiglione, Justin Beau, Sujit Jacob, Liam Le.

76.    The company had set criteria of required experience and qualifications for a senior director level assignment to be made which Plaintiff was familiar with given her management of the global job architecture project. Plaintiff was replaced with a person who had lesser qualifications given she had no software industry experience, rather came from a healthcare background.

77.    The jobs that both Plaintiff and the man/men and Plaintiff had were comparable in terms of the skills, training, and working conditions, and were performed in the same establishment and under similar physical conditions.

78.    Plaintiff was paid different lesser pay than a male employee for doing the same work. Further, Male colleagues with less experience and qualifications than Plaintiff remained employed with AspenTech and some were promoted to the Senior Director or Director level including:

- Kyle Rogers (Sr. Director)
- Brian Marquardt (Sr. Director)
- Matt Korkowski (Sr. Director)
- Josh Wilm (Sr. Director)

79.    On February 19, 2024, through February 23, 2024, Kayla was in Mexico on an approved vacation, but when she returned to work, she was retaliated against for her earlier whistleblowing by being wrongfully terminated.

80.     Plaintiff suffered severe damage to her financially, socially, mentally, and emotionally due to Defendant's retaliation for resisting and reporting discrimination and other illegal actions. The wrongful termination against Plaintiff was the direct and proximate cause of damage to her in excess of seventy-five thousand dollars ($75,000).

COUNT TWO

VIOLATION FEDERAL OF THE EQUAL PAY ACT 29 U.S.C. §206(d)

81.     The allegations of the previous paragraphs are re-alleged and incorporated herein by reference in this paragraph as if fully set forth herein.

82.     The defendants paid different wages to men and women for jobs that require equal skill, effort, and responsibility.

83.     Defendants paid different wages to employees of opposite sexes for equal work.

84.     Plaintiff observed men who did substantially equal work where the jobs require similar skill, effort, and responsibility were paid more than woman.  Plaintiff observed that men such as such as Tony Coyle, Dan Whitney, Dan Lysaker, TJ Surbella, and Daniel Olson got paid more than she did.

85.     The jobs the man/men and Plaintiff had were Josh Boysen, Mike Buth, and Mike Henzel, Tony Coyle, Dan Whitney, Dan Lysaker, TJ Surbella, and Daniel Olson comparable in terms of the skills, training, and working conditions.

86.     Plaintiff was paid less than a male employee(s) for doing the same work under similar working conditions. The following men who had the same experience, skills, education, training, working conditions, and responsibilities were promoted and Plaintiff was terminated.

87.     The jobs that both Plaintiff and the man/men Tony Coyle, Dan Whitney, Dan Lysaker, TJ Surbella, and Daniel Olson were paid more than Plaintiff and performed their job duties in the same establishment and under similar physical conditions.

88.      Defendants' failure to pay equal pay to a man and Plaintiff as stated above was the direct and proximate damage to Plaintiff in excess of seventy-five thousand dollars ($75,000).

COUNT THREE

VIOLATION OF EQUAL PAY MINN. STAT. §181.67

89.     The allegations of the previous paragraphs are re-alleged and incorporated herein by reference in this paragraph as if fully set forth herein.

90.     The Plaintiff observed pay given to different employees of Defendants. Kayla Poppe observed men who did substantially equal work where the jobs required similar skill, effort, and responsibility and were paid more than woman.

91.      From plaintiff's observations and dealing with different employees she in good faith suspected that Defendants did not pay equal pay to woman and men.

92.     Plaintiff a woman was not paid the same rate for similar work at the same location as male colleagues with the same/similar education, training, skills, effort, and responsibilities.

93.     As a direct and proximate result of Defendants violation of Minn. Stat. §181.67 was damaged in excess of seventy-five thousand dollars ($75.000).

COUNT FOUR

VIOLATION OF MINN. STAT. §181.13

94.     The allegations of the previous paragraphs are re-alleged and incorporated herein by reference in this paragraph as if fully set forth herein.

Minn. Stat. §181.13 PENALTY FOR FAILURE TO PAY WAGES PROMPTLY.

(a) When any employer employing labor within this state discharges an employee, the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable upon demand of the employee. Wages are actually earned and unpaid if the employee was not paid for all time worked at the employee's regular rate of pay or at the rate required by law, including any applicable statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority, whichever rate of pay is greater. If the employee's earned wages and commissions are not paid within 24 hours after demand, whether the employment was by the day, hour, week, month, or piece or by commissions, the employer is in default. In addition to recovering the wages and commissions actually earned and unpaid, the discharged employee may charge and collect a penalty equal to the amount of the employee's average daily earnings at the employee's regular rate of pay or the rate required by law, whichever rate is greater, for each day up to 15 days, that the employer is in default, until full payment or other settlement, satisfactory to the discharged employee, is made. In the case of a public employer where approval of expenditures by a governing board is required, the 24-hour period for payment does not commence until the date of the first regular or special meeting of the governing board following discharge of the

employee. An employee's demand for payment under this section must be in writing but need not state the precise amount of unpaid wages or commissions. An employee may directly seek and recover payment from an employer under this section even if the employee is not a party to a contract that requires the employer to pay the employee at the rate of pay demanded by the employee, so long as the contract or any applicable statute, regulation, rule, ordinance, government resolution or policy, or other legal authority requires payment to the employee at the particular rate of pay. The employee shall be able to directly seek payment at the highest rate of pay provided in the contract or applicable law, and any other related remedies as provided in this section.

95.    On February 27, 2023, when Plaintiff was terminated, she was not paid all compensation due to her.

96.    Defendants did not pay her for all vacation time, but instead wrongfully deducted from her pay time.  It owes her for the money that she was not paid and/or deducted.

97.    Defendants wrongfully withheld payments due her for time spent on its behalf even while on vacation.

98.    Defendant did not pay her money due for vesting of stock on termination.  Further, it pretextually cut her off from receiving a bonus and contribution to her 401 K Plan.

99.    As a direct result of Defendants violation of Minn. Stat. §181.13 she has been financially damaged in excess of seventy-five thousand dollars ($75,000).

COUNT FIVE

GENDER DISCRIMINATION IN
VIOLATION OF TITLE VII

100. The allegations of the previous paragraphs are re-alleged and incorporated herein by reference in this paragraph as if fully set forth herein.

101. Plaintiff was damaged by Defendant's violation of title VII of the Civil Rights Act of 1964 including compensation for lost wages, benefits and other injuries caused by its discrimination against plaintiff because of her female gender.

102. Plaintiff, a female, was denied rewards and career growth opportunities that she earned that were given to male employees in furtherance of Defendants' female gender discrimination.

103. Plaintiff was pretextually, unjustly reviewed and scrutinized for doing her job that her male peers would not and were not reviewed for doing.

104. Plaintiff was retaliated against for her resisting female gender discrimination and harassment, investigating it, encouraging an employee to report it and good faith reporting suspected discrimination/harassment.

105. Plaintiff's comments, suggestions and reports were ignored while her male peers were not but in fact given deference.

106. Plaintiff a female experienced gender discrimination from male supervisors.

107. Defendant created a hostile and toxic gender discriminatory work environment including using Plaintiff's ideas and work but giving the credit to males while fostering an atmosphere that encouraged false accusations against Plaintiff and

encouraging others, especially men, to resent her.

108.    Defendants did pretextual acts such as an investigation to chill Plaintiff from further resistance and reporting of gender discrimination and retaliation.

109.    There was a repeated pattern of conduct by Defendants where they ignored her comments, suggestions, concerns and reports while retaliating against Plaintiff, as a female, for her reports and input offered in good faith.

110.    Plaintiff was purposely set up with barriers to her success based on Defendant's gender discrimination. One of these barriers was holding Plaintiff to standards that male coworkers weren't such as when Plaintiff, as a female, was treated as though she was being too aggressive in her investigation of employee discrimination claims while males who were more aggressive including discriminating and harassing females were touted as being assertive which was positive.

111.    There was a clear pattern of Defendants hiring women such as Plaintiff for their expertise and further taking advantage of it by touting diversity while forcing the women out of their jobs once they had successfully done a project so it could be turned over to a male.

112.    Plaintiff verbally reported in good faith to Aspen Technology Inc. HR on or about September of 2023, and again in early October of 2023, about the suspected discrimination and harassment that was present at Defendant's workplace.

She renewed this reporting again in early 2024. Plaintiff also in good faith reported the Defendants not paying woman equally as men more than once in 2023, and early 2024. Defendant Aspen's attitude toward Plaintiff's good faith reports was that she should not talk about it and that Aspen Technology Inc. and OSI wanted to discourage her from testifying further related to her suspected violation of law.

113. Plaintiff observed after Kayla's foregoing resistance and whistleblowing her employer had a retaliatory attitude toward her and acted to chill her interest in further investigations of discrimination. It showed pleasure with her performance but wanted to discourage her from resisting discrimination and whistleblowing. She also reported in good faith that OSI and Aspen Technology Inc. were discriminatorily treating men differently and better than females by among other things not listening to Plaintiff's recommendations and reports while giving deference to ones made by male employees. She in good faith reported to her superior that Defendants were maintaining a hostile work environment by condoning men acting in a discriminatory and harassing workplace where men were allowed to say and do sexually offensive things.

114. On December 29, 2023, an employee informed Plaintiff that her manager was grossing her out. Kayla told her that was a highly inappropriate conversation for a manager to be having with their direct report, especially male to female. Plaintiff recommended her to report this discriminatory and harassing

conduct in her exit interview which she did.

115.   On January 3, 2024, Kim Hirsch a superior of Kayla's emailed an employee to follow up on the harassment claim.   Maegan McCrea began the investigation into the incident including having an interview with Kayla and emailed the alleged injured complaining employee on January 24, confirming the investigation was closed and there was no evidence of misconduct or sexual harassment found.  There was a concern of Plaintiff's that the harassment by a man was being ignored that was known to Aspen Technology Inc.  Kayla also knew that Defendants were very displeased that she had recommended that a person report harassment at an exit interview.  It was clear to Plaintiff that Defendants were pleased with her overall performance but had a retaliatory attitude toward her resistance and reporting of suspected violations of law.

116.   In January of 2024, Defendants had a retaliatory attitude toward Plaintiff resisting and reporting that Defendants were ignoring discrimination complaints and for her wanting to fully investigate a complaint involving an employee named Orr.

117.   On January 2024, Kayla in good faith resisted and reported suspected violation of law by Defendants discriminatorily laying off employees under the pretextual label of conducting a reduction in force (RIF) for the Services team.

118.   January 17, 2024, Kayla sent a text to Jorge Colon and Mark Gaalswyk

(senior leaders of the business) in response to a Teams message Jorge had sent around the upcoming RIF actions and how "these people will be backfilled." Backfilled meaning to be replaced. The layoffs Plaintiff suspected were not to be based on a need to do so as reflected in the employer making clear that it intended to backfill in other words get rid of people who were considered to be a female who resisted discrimination or minority and put other people in their place. The employer was pretextually using the excuse of a RIF action for discriminatorily laying people. Defendants did so with the false claim that there was no need for the people it was laying off, while in reality intending to replace them ie backfilling.

119.   Plaintiff observed that backfilling employees as new employees appeared to be discriminatory and/or retaliatory because it disproportionately affected individuals based on a protected characteristic like gender, sexual preference or race. She suspected that this would violate existing anti-discrimination laws.   Based on what she observed she did not in good faith believe the Defendants were ensuring that the backfilling practices were fair and non-discriminatory when replacing employees that were let go by Defendants.

120.   Defendants gave the impression that it wanted to backfill job positions previously held by employees from a certain protected group with new hires from a different group which Plaintiff suspected was a discriminatory practice.

121.   Plaintiff in good faith reported to a superior that the plan of backfilling

was suspected to be illegal and back filling was being used as a euphemism for discriminatory and/or retaliatory termination.

122.  Plaintiff in good faith reported female gender discrimination, unequal pay and a deceptive scheme to discriminatorily and/or retaliatorily layoff people that it wanted to get rid of so it could replace them with other people.  She was retaliated against by the employer for resisting and in good faith reporting the suspected violations of law by wrongfully terminating her.

123.  No reasonable basis was given by Aspen Technology for wrongfully terminating Plaintiff.  She had met and exceeded expectations. She had met her goals and received positive feedback for her performance. Plaintiff's resistance and reporting of suspected violations of law led to her being pretextually wrongfully terminated.

124.  As a direct and proximate result Plaintiff received damages to her Reputation, acquiring desirable future employment, financial Damages, loss of her benefits, job and experienced severe mental and emotional distress.

125.  By reason of the foregoing Plaintiff has been damaged in excess of seventy-five thousand dollars ($75,000).

COUNT SIX

GENDER DISCRIMINATION IN

VIOLATION OF MINN. STAT. §363A.08

38

126.   The allegations of the previous paragraphs are re-alleged and incorporated herein by reference in this paragraph as if fully set forth herein.

127.   Plaintiff, a female, was denied rewards and career growth opportunities that she earned. These were given to male employees in furtherance of Aspen's gender discrimination and retaliation.

128.   After her resistance and reporting of gender discrimination in 2023, and 2024, despite her excellent performance she was retaliated against by being terminated.

129.   Plaintiff was pretextually, unjustly and scrutinized which was not done to male peers.

130.   Defendants knew that Plaintiff was a female and the employer treated her differently and worse than her male counterparts.  The Defendants maintained a compensation system where Plaintiff as a female was paid less than a male with a similar job.

131.   Plaintiff was forced to work in a hostile work environment for Aspen Technology because of her female gender.

132.   Males were allowed to do less work and performance than Plaintiff, a female, without repercussions while Plaintiff was not treated in an equal and fair manner.

133.   Plaintiff suffered adverse employment actions based on a sex

discriminatory motive by her employer Aspen.

134.   The Plaintiff performed her job duties at a level that met the employer's legitimate expectations at the time of the adverse employment actions. Defendants' aforementioned conduct was because of her female gender and her resistance to suspected violations of anti-discrimination laws. The employer's behavior toward Plaintiff because of her female gender was unwelcome; demeaning, insulting, upsetting, continuous; repeated; and caused her severe mental and emotional distress.

135.   Defendants knew about the gender discrimination but failed to take prompt remedial action to correct it.

136.   Defendants gender discrimination and related retaliation directed at Plaintiff was the direct and proximate cause of damage to Plaintiff.

137.   As a direct and proximate result Plaintiff received damages to her reputation, acquiring future employment, financial damages. health damages and loss of her job.

138.   By reason of the foregoing acts of Defendants Plaintiff has been damaged in excess of seventy-five thousand dollars ($75,000).

COUNT SEVEN

NEGLIGENCE OF DEFENDANTS

NEGLIGENT SUPERVISION, AND NEGLIGENT RETENTION

139.   The allegations of the previous paragraphs are re-alleged and incorporated herein by reference in this paragraph as if fully set forth herein.

140.   Defendants herein had a duty of due care and other duties to the Plaintiff.  The Defendants due to the nature and character of the corporate entities are responsible for their affiliates, directors, officers, manager, supervisors, HR personnel. employees and agent's actions under Respondeat Superior. Defendants are liable jointly and severally for the negligence set forth in this complaint.

141.   It was foreseeable that if Defendants, affiliates, employees, officers, supervisors, HR personnel and agents including but not limited to its directors, managers, supervisors and agents did not observe their duty of care and fiduciary duties, among others Plaintiff would be damaged. Despite the fact that Defendants were aware of or had legal responsibility to be aware of these duties Defendants, its affiliates, officers, directors, supervisor, HR personnel, managers and agents failed to exercise reasonable due care through the date of this Complaint to Plaintiff and she was damaged professionally, financially, reputation wise and emotionally and in other ways as well.

DEFENDANTS NEGLIGENT

SUPERVISION OF DIRECTORS, OFFICERS,

MANAGERS AND EMPLOYEES: WHISTLEBLOWING

142.   Defendants were negligent in not properly supervising their affiliates,

directors, officers, managers, supervisors, employees, HR personnel and addressing reports of discriminatory, harassing and retaliatory conduct (whistleblowing reports) and other notices and complaints from Plaintiff and other employees. Defendants were negligent in not supervising or taking appropriate action to properly address the violations of law covered in Plaintiff's whistleblowing reports. This negligence caused Plaintiff serious injury and other harms; and was against law and public policy.

NEGLIGENT SUPERVISION

143.    Defendants and their affiliates, officers, directors, managers, supervisors, HR personnel, employees and agents were negligent in not properly supervising. providing proper training, precautionary measures and investigative tools to assure the employees and the public that its employees acted within the law. Defendants' negligence in breaching the foregoing supervisory duties was the direct and proximate cause of damage to the Plaintiff and to others.

NEGLIGENCE IN RETAINING AFFILIATES. OFFICERS, MANAGERS,

SUPERVISORS HR PERSONNEL, AGENTS, REPRESENTATIVES

AND EMPLOYEES WHO ACTED CONTRARY TO ANTI-DISCRIMINATION LAWS.

144.    Defendants were negligent in retaining and maintaining employees who discriminated, harassed and retaliated against others at the work place in violation of prevailing law.  Further, by retaliating against Plaintiff for resisting and reporting

discrimination, harassment and retaliation Defendants severely damaged Plaintiff. Further, Defendants and its employees committed or did acts aiding discriminatory acts contrary to Title VII and Minn. Stat. §363A.08, et seq., as amended and other breaking of the law as set forth above in this complaint.

145.   Defendants were negligent in not properly supervising the foregoing affiliates, Directors, managers, supervisors, HR personnel and employees while retaining them given what they knew or should have known about their history of dealing with plaintiff and other employees. Defendants failed to set up proper precautionary measures and investigative tools to assure employees, clients, and the public that each of its employees were at all times acting in a proper manner and obeying law.

146.   Defendants had a duty to review all information related to its employees including the foregoing affiliates, managers, supervisors, HR personnel, agents and employees including how they handled its employees in comportment with the law. Defendants had a duty to supervise, but also to not retain the foregoing managers, supervisors, officers, HR personnel, agents and employees who did not act properly, ethically or lawfully. Defendants took no action to protect the welfare of Plaintiff and ignored its duties. This negligence in retaining the foregoing Directors, managers, supervisors, HR personnel, agents and employees allowed them, and ratified and encouraged them to force Plaintiff to work in a law-breaking

environment.    Defendants maintained a workplace that was discriminatory, harassing, retaliatory and an unlawful work environment. It further failed to protect Plaintiff against continued discrimination, harassment and retaliation.

147.    As a direct and proximate result of Defendants' negligence set forth herein, Plaintiff has suffered substantial damages. Plaintiff has suffered severe mental and emotional distress, incurred a loss of reputation, had a loss of earnings, lost benefits, lost employment, lost employment opportunities, and become anxious, depressed, loss of capacities to work in related employment. Defendants aforementioned negligence was the direct and proximate cause of damage to Plaintiff.

148.    The Plaintiff has been damaged in excess of seventy-five thousand dollars ($75,000).

COUNT EIGHT

PROMISSORY ESTOPPEL

149.    The allegations of the previous paragraphs are re-alleged and incorporated herein by reference in this paragraph as if fully set forth herein.

150.    The Defendants made clear unambiguous promises to induce Plaintiff to continue to work for them by promising to pay her vesting of stock options on March 1, 2024, and later bonus and contributions to her 401K. Plan. The Plaintiff in reliance on Defendant's promises continued to accept difficult and time-consuming

work relying on Defendants promises.  Defendant indicated no problems in her performance, but to the contrary praised her performance, gave her assignments indicating its confidence in her work and gave her merit pay and other financial rewards in the fall of 2023.  Her reliance on Defendant keeping its promises was reasonable and foreseeable. Plaintiff suffered damage due to her reasonable reliance on the Defendant's promises.

151.   Defendants continued to represent to Plaintiff in the fall and early winter of 2023-2024, she would have an opportunity to enhance her career which included her growing personally, professionally, and financially by staying with Defendant and accepting very difficult assignments. It gave no indication of wanting to replace her.

152.   Defendant surprisingly gave Plaintiff notice that she was being terminated on February 27, 2024, and presented her with a severance agreement with a termination date of March 19, 2024, which would allow her to have her vesting of stock that was supposed to take place on March 1, 2024, but not her bonus or contributions to the 401 K plan.  It then went back on its word and gave her a second amended severance agreement that was back dated to February 27, 2024, to cut off her vesting of stock options that were to have been paid on March 1, 2024.

153.   The foregoing representations by Defendant were not true when made and not honored by Defendant.

154.    These false representations induced plaintiff to continue to work under reliance on Defendant providing her with vesting of stock, 401K plan contributions, bonus as well as an opportunity for promotion.

155.    The Defendant intentionally, knowledgably with scienter made false representations that induced Plaintiff to do work that she would not have done but for its false promises.

156.    Plaintiff reasonably relied upon Defendants representations.

157.    The Defendants knew the Plaintiff went through considerable time, trouble, and expense to take and keep the job.  It was aware that she had two small children to support and went through the difficult work it assigned her in dependance on the compensation promised so Defendants evaded the spirit and substance of related representation of what it offered to induce the Plaintiff. By Defendants actions it damaged the Plaintiff's right to receive the fruits of her labor.

158.    The defendants foregoing acts of promissory estoppel were the direct and proximate cause of damage to Plaintiff.

159.    The Defendants should be estopped and liable jointly and severally for the damages done to Plaintiff by them.

160.    Plaintiff has been damaged in excess of seventy-five-thousand dollars ($75,000).

COUNT NINE

UNJUST ENRICHMENT

161.   The allegations of the previous paragraphs are re-alleged and incorporated herein by reference in this paragraph as if fully set forth herein.

162.   Plaintiff performed work that earned Defendants substantial benefits in 2023, and 2024.

163.   Plaintiff was led to believe by Defendants representations and acts that she was due to be paid by having a vesting of stock, bonus and other benefits including a contribution to a 401 K plan.

164.   Aspen Technology (AspenTech) stated in their Position Statement submitted to Poppe's EEOC claim on December 11th, 2024, they had already decided to terminate Poppe in the "fall of 2023," yet failed to disclose this fact to her. This new assertion to the EEOC appears to be inconsistent with what Plaintiff observed working for Defendants.

165.   If Defendants now calling themselves to the EEOC AspenTech had made a decision to terminate Poppe in the "fall of 2023," while allowing her to continue working without disclosure of its intentions toward her raises serious legal concerns, including fraudulent misrepresentation, unjust enrichment, and bad faith employment practices.  This would mean that Defendant purposely overworked her, made her do personal sacrifices for her family and planned on getting the benefits from her expertise based on its falsely misleading her.

166.    Defendants calling themselves to the EEOC AspenTech created a false impression of continued employment by assigning Poppe long-term projects, difficult tasks and additional responsibilities. By assigning her additional responsibilities including overseeing a critical workforce reduction (Adherent) in January 2024, managing an increased HR workload, and working during an approved vacation she was led to believe that she was going to get the vesting of stock and later bonus, 401K plan contributions and opportunity for promotion.

167.    Defendants (AspenTech) knowingly misled her about her job security. Poppe reasonably relied on these representations, making professional and financial commitments based on assumed job stability. As a result, Poppe made life-altering financial and professional decisions under Defendants false pretenses, causing her severe economic and emotional harm. Poppe suffered damages, including financial losses, severe emotional distress, and reputational harm, when she was unexpectedly terminated despite her significant contributions.

168.    Defendants (AspenTech) unfairly benefited from Poppe's increased workload, including her leadership in managing HR matters following the departure of a Bedford HR team member. The company profited from her contributions while concealing its intent to terminate her, leading to a wrongful retention of benefits at Poppe's expense.

169.    Despite Plaintiff's longer tenure with the company, her position was

eliminated while a less-tenured colleague in a similar role was retained.

170.   There is a Lack of Documentation or Due Process in the handling of Plaintiff which shows Defendants intent to utilize her skills up to the date when it was to supply the expected rewards and then unjustly enrich itself by cutting her off before the date it was due to pay her.

171.   Plaintiff received no warnings, evaluations, or other documentation indicating that her performance was below expectations in supporting Defendants acted to enrich themself by their action of terminating her. The absence of such documentation shows Defendants decision to terminate her was not made in adherence to company policies and procedures regarding performance management but rather to deny her the just and expected rewards for her hard work.

172.   Defendant not only did not notify Plaintiff in a timely and fair manner but it chose a less-tenured colleague in a similar role to be retained.

173.   Plaintiff expected to receive her stock options on March 1, 2024.  The original severance agreement presented to her by K. Hirsch on February 27, 2024, outlined specific terms and conditions, which were understood to be the final offer at the time. That agreement (included) stated Plaintiff's separation date would be March 19, 2024, such that she would receive full benefits and compensation, including vested long-term incentive. It also indicated that she would receive eight weeks of pay after termination.

174.    In furtherance of Defendants plan to be unjustly enriched themselves they provided the foregoing a revised severance agreement by email to Plaintiff on March 8, 2024, which was after the March 1, 2024, deadline and contained material changes. Furthermore, the revised document was backdated to February 27, 2024, which shows its effort to create a pretextual way to get out of paying Plaintiff the stock options that were due if her termination date was March 19, 2024, as originally presented to Plaintiff.

175.    The Defendants' backdating a severance agreement was intentionally altering the timeline of events to enrich itself at Plaintiff's expense.

176.    There has been an impact on Plaintiff's professional reputation which has the potential to harm her future career opportunities.

177.    Defendants pretextually terminated her position before the date the foregoing vesting of stock, bonus and 401K contributions were to be paid.

178.    Defendants have wrongfully and unjustly withheld money earned and due to Plaintiff and have been unjustly enriched by doing so.

179.    The defendants received a benefit of Plaintiff's substantial services while misleadingly representing that substantial monies including the vesting were forthcoming to her after March 1, 2024.  They however, pretextually terminated her without a valid reason on February 27, 2024, to evade paying her the money and benefit she had earned through her efforts before that day.

180.    The defendants' enrichment was unjust and has harmed Plaintiff.

181.    The defendants' enrichment was at the expense of the Plaintiff.

182.    The defendants knowingly received or obtained something of value it knew should go to Plaintiff including the money that was involved in the vesting, benefits, bonus and 401K contribution.

183.    The defendants jointly and severally should in equity and good conscience pay for the loss of money Plaintiff should have received in vesting, bonus the 401K contribution and money she lost in benefits.

184.    Defendants foregoing acts are the direct and proximate damage to Plaintiff.

185.    Plaintiff has been damaged by Defendants unjust enrichment in excess of seventy-five thousand dollars ($75,000).

COUNT NINE

VIOLATION OF THE MINNESOTA PERSONNEL RECORDS ACT
(MINN. STAT. §181.961 AND MINN. STAT. §181.963).
FAILURE TO SUPPLY A PERSONAL FILE IN SEVEN DAYS
AND A REASON FOR PLAINTIFF'S TERMINATION.

186.    The allegations of the previous paragraphs are re-alleged and incorporated herein by reference in this paragraph as if fully set forth herein.

187.    Defendants failed to provide requested information about or related to Kayla Poppe as required by the Minnesota Personal Records Act (Minn. Stat. §181.961 and §181.963). The statute provides that, information properly belonging

in an employee's personnel record that was omitted from the personnel record provided by an employer to an employee for review pursuant to the Act may not be used by the employer in an administrative, judicial, or quasi-judicial proceeding.

188.    Defendant's violation of Minn. Stat. §181.963 has been the direct and proximate cause of damage to Plaintiff and that it not be able to use any information not provided to Plaintiff.

189.    That any information not provided by Defendants to Plaintiff not be able to be used by it in the instant litigation.

190.    Further, Defendant did not respond in a timely way to providing Plaintiff with a reasonable statement of why she was terminated.

191.    That this Court award Plaintiff such other and further relief as it deems proper.

COUNT TEN

DECLARATORY JUDGEMENT

192.    The allegations of the previous paragraphs are re-alleged and incorporated herein by reference in this paragraph as if fully set forth herein.

193.    Based on the foregoing violation of Minn. Stat. §181.961 and Minn. Stat. §181.963 the Plaintiff's respectfully moves the court for a declaratory judgment that nothing in the personnel file or other related information not provided to Plaintiff within the Minnesota statute including what was required in 7 days, if

records are in the state of Minnesota which they were in this situation, of her request. The Defendants should not be able to use any of this non-disclosed information in any legal matter including the instant lawsuit. The Plaintiff is asking for all relief covered under the foregoing Minnesota statutes.

194.    The violation by Defendants was the direct and proximate cause of damage to Plaintiff. Therefore, Plaintiff respectfully requests this Court to enter the foregoing declaratory judgment against Defendants Aspen Technology pursuant to Minn. Stat. §181.961 and §181.963.

WHEREFORE, Plaintiff requests the following relief:

A.    The Plaintiff demands damages as set forth and allowable by law for Defendants violations of law.

B.    That post-judgment interest be awarded against Defendants jointly and severally along with reasonable attorneys' fees, costs and expenses which the Plaintiff necessarily incurred in bringing and pressing this case.

C.    That Plaintiff be awarded judgment for retaliation for whistle blowing in violation of the Minnesota Whistle Blowing Act (Minn. Stat. §181.932, *et seq*, as amended) against Defendants jointly and severally in excess of seventy-five thousand dollars ($75,000).

D.    That Plaintiff be awarded judgment for violation of the Federal Equal Pay Act 29 U.S.C. §206(d) against Defendants jointly and severally in excess of

seventy-five thousand dollars ($75,000).

E.      That Plaintiff be awarded judgment for violation of the Minnesota Equal Pay Act Minn. Stat. §181.67 against Defendants jointly and severally in excess of seventy-five thousand dollars.

F.      That Plaintiff be awarded all compensation due to her from Defendants for their violation of Minn. Stat. §181.13.

G.      That Plaintiff be awarded judgment against Defendants jointly and severally for gender discrimination and sex harassment in violation of Title VII.

H.      That Plaintiff be awarded judgment against Defendants jointly and severally for gender discrimination and sex harassment in violation of the Minnesota Human Rights Act.

I.      That Plaintiff be awarded judgement for negligence of Defendants jointly and severally.

J.      That Plaintiff be awarded judgment against Defendants jointly and severally for promissory estoppel in an amount in excess of seventy-five thousand dollars ($75,000).

K.      That Plaintiff be awarded judgment against defendants jointly and severally for unjust enrichment in excess of seventy-five thousand dollars ($75,000).

L.      That Plaintiff be awarded declaratory judgment that no document, paper or any part of her personnel record or any related document, writing or

recording be able to be used in the instant case or any other legal matter against her (Minn. Stat. §181.963).

DEMAND FOR JURY TRIAL

Plaintiff demands a jury on all claims alleged herein by jury.

Date:                                                   NEFF LAW FIRM, P.A.

                                                        /s/Fred L. Neff
                                                        Fred L. Neff, Atty. Reg. #0077355
                                                        One Corporate Plaza, Suite 165
                                                        7400 Metro Boulevard
                                                        Edina, MN 55439
                                                        Telephone: (952) 831-6555
                                                        Facsimile: (952) 831-2711
                                                        Email: info@neff-law-firm.com

                                                        SCOTT J. STROUTS

                                                        /s/Scott J. Struts (#156152)
                                                        P.O. Box 24812
                                                        Minneapolis, MN  55424
                                                        T: (612) 371-9628
                                                        Email: Perymason@aol.com

                                                        ***ATTORNEYS FOR PLAINTIFF***

ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find that the undersigned act.

Date: February 24, 2025                                 NEFF LAW FIRM, P.A.

/s/Fred L. Neff
Fred L. Neff, Atty. Reg. #0077355
One Corporate Plaza, Suite 165
7400 Metro Blvd.
Edina, MN 55439
Telephone: (952) 831-6555
Facsimile: (952) 831-2711
Email: info@neff-law-firm.com

SCOTT J. STRUTS

Scott J. Strouts (#156152)
P.O. Box 24812
Minneapolis, MN  55424
T: (612) 371-9628
Email: Perymason@aol.com

***ATTORNEYS FOR PLAINTIFF***

Acknowledgement

I, Kayla Poppe, have read the foregoing Complaint and under the pains and penalties of perjury hereby state that to the best of my knowledge and belief the information, and the factual statements therein are Aspen True and correct.

Dated: 3|24|25

Kayla Poppe

57